UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEATHER ANN SMALES, | ) | CIVIL ACTION NO. 4:21-CV-789 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1] | ) | |
| *Acting Commissioner of Social Security* | ) | |
| Defendant | ) | |

<u>MEMORANDUM OPINION</u>

I.    INTRODUCTION

Plaintiff Heather Ann Smales, an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §1383(c)(3)(incorporating  42 U.S.C. §405(g) by reference).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, the court finds the Commissioner's final decision is not supported by substantial evidence. Accordingly the Commissioner's final decision will be VACATED and this matter will be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for a new administrative hearing..

II.    BACKGROUND & PROCEDURAL HISTORY

On October 16, 2018, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 20).  In this application, Plaintiff alleged she became disabled on July 1, 2018, when she was 30 years old, due to the following conditions: mental issues, bipolar, anxiety, and depression. (Admin. Tr. 20, 28, 150). Plaintiff alleges that the combination of these conditions affects her ability to walk, talk, complete tasks, concentrate, understand, and get along with others. (Admin. Tr. 174). Plaintiff has a high school education. (Admin. Tr. 28). Before the onset of her impairments, Plaintiff worked as a pressing machine operator, and packager/dry cleaning helper. *Id*.

On February 27, 2019, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 20). On April 10, 2019, Plaintiff requested an administrative hearing. *Id*.

On September 17, 2019, Plaintiff appeared with counsel and testified during a hearing before Administrative Law Judge Richard Zack (the "ALJ"). *Id*. On October 28, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 29). On December 30, 2019, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 117-122). Along with his/her request, Plaintiff submitted new evidence that was not available to the ALJ when the ALJ's decision was issued. (Admin. Tr. 13-14).

On February 26, 2021, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1). In that denial, the Appeals Council addressed the additional evidence as follows:

> You submitted a statement from Matthew A. Berger, M.D., dated February 24, 2020 (2 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

(Admin. Tr. 2).

On April 30, 2021, Plaintiff filed a complaint in district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the application is not

Page 3 of 19

supported by substantial evidence, and improperly applies the law. *Id*. As relief, Plaintiff requests that the court reverse the Commissioner's final decision and award benefits beginning October 16, 2018. *Id*.

On October 29, 2021, the Commissioner filed an answer. (Doc. 21). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. *Id*. Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 22).

Plaintiff's Brief (Doc. 46), the Commissioner's Brief (Doc. 27), and Plaintiff's Reply (Doc. 28) have been filed.  This matter is now ready to decide.

III.   STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals.

A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's

factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

In practice, this is a twofold task. First, the court determines whether the final decision is supported by substantial evidence. To accomplish this task, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . ."). In doing so, however, the court is enjoined to refrain from trying to

Page 6 of 19

re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

Second, the court must ascertain whether the ALJ's decision meets the burden of articulation the courts demand to enable judicial review. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see*

*also* 20 C.F.R. § 416.905(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. §

---

[2] Throughout this Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on October 28, 2019.

416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

C.     GUIDELINES FOR THE ALJ'S EVALUATION OF A CLAIMANT'S SUBJECTIVE STATEMENTS ABOUT SYMPTOMS

The Social Security Regulations and Rulings set out a two-step process to evaluate a claimant's subjective statements about his or her symptoms. 20 C.F.R. § 416.929.

First, subjective symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to do work activities if such symptoms result from a medically determinable impairment. 20 C.F.R. § 416.929(b). Put differently, if there

Page 9 of 19

is no medically determinable impairment that could reasonably produce the symptom alleged, the symptom cannot be found to affect the claimant's ability to do basic work activities. 20 C.F.R. § 416.929(b); SSR 16-3p, 2016 WL 5180304.

Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms caused by the claimant's medically determinable impairments. 20 C.F.R. § 416.929(c)(1). Symptoms will be determined to reduce a claimant's functional capacity only to the extent that the alleged limitations and restrictions can reasonably be accepted as consistent with the ALJ's review of the entire case record. 20 C.F.R. § 416.929(c)(4). This includes, but is not limited to, medical signs, laboratory findings, diagnoses, medical opinions, prior administrative medical findings, as well as information about how these symptoms affect a claimant's ability to work. The Social Security Administration has recognized that individuals may experience their symptoms in different ways and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16-3p, 2017 WL 5180304 at *4.

Thus, to assist in the evaluation of a claimant's subjective statements about his or her symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's medically determinable impairments. These factors include: the claimant's daily

activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; any factor that precipitates or aggravates the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms; any treatment, other than medication, the claimant receives or has received for relief of his or her pain or other symptoms; any measures the claimant uses or has used to relieve his or her pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and any other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 416.929(c)(3).

Although the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) .

IV.    DISCUSSION

Plaintiff raised the following issues in her statement of errors:

(1)    "Did the ALJ error abuse his discretion by finding that plaintiff was not disabled pursuant to Social Security guidelines?" (Doc. 26, p. 2).[3]

Plaintiff's brief is construed as raising the following arguments:

---

[3] This court's LR 83.40.4(b) provides that:

(1)   Substantial evidence does not support the ALJ's decision to discount Dr. Berger's check-box PRT assessment and check-box medical source statement.

(2)   Substantial evidence does not support the ALJ's decision because he mischaracterized evidence to support his findings at step three.

(3)   The ALJ did not, but should have, discussed Plaintiff's husband's testimony about Plaintiff's symptoms and limitations.

A.   The ALJ's Decision Denying Plaintiff's Application

In his October 2019 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between October 16, 2018 (Plaintiff's application date) and October 28, 2019 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 29).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: mood disorder, anxiety disorder, post-traumatic stress disorder, and schizophrenia. (Admin. Tr. 22).

---

This statement shall set forth in separate numbered paragraphs the specific errors committed at the administrative level which entitle plaintiff to relief. The court will consider only those errors specifically identified in the briefs. *A general argument that the findings of the administrative law judge are not supported by substantial evidence is not sufficient.* (emphasis added).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in all ranges of work defined in 20 C.F.R. § 416.967 subject to the following nonexertional limitations:

> The claimant would have difficulty sustaining highly detailed or highly complex occupations. She would have difficulty working in a job where she was dealing directly with the public face-to-face, working as a team member having face-to-face contact with several other coworkers and supervisors who are part of that team, and working in close proximity throughout the workday. The claimant would have difficulty if her job took her to different locations day in and day out and she would have to perform her duties among crowds of strangers on a regular basis. The claimant maintains a baseline ability to have occasional contact with coworkers, supervisors, and the public and could respond appropriately with occasional contact. The claimant is able to understand, remember, and carry out simple instructions and she can make simple work related decisions. She could respond appropriately to work situations and changes that you would typically see at simple, routine repetitive type of job.

(Admin. Tr. 24).

At step four, the ALJ found that, during the relevant period, Plaintiff could not do her past relevant work. (Admin. Tr. 28).

Page 13 of 19

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 28-29). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three representative occupations: laundry worker/folder, DOT #369.687-018; cleaner/polisher of small parts, DOT #709.687-010; and inserter, DOT #920.687-138. *Id.*

    B.    WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S EVALUATION OF PLAINTIFF'S SUBJECTIVE STATEMENTS ABOUT HER SYMPTOMS

In his decision, the ALJ summarized Plaintiff's statements as follows:

> The claimant alleged disability based on mental issues, bipolar disorder, anxiety disorder, and depression (Ex.2E). She reported difficulty focusing and often fought with her husband about going to work. The claimant testified she heard voices and saw things that were not there. She reported some days that she slept all day. *The claimant reported she could prepare sandwiches, otherwise her husband cooked. The claimant reported she could do laundry.* She reported getting paranoid going out, but did not feel comfortable driving. She reported she could shop once per month in stores. The claimant reported she did not socialize with others. The claimant reported she could pay attention for very limited time (Ex.5E). *The claimant testified she had three children, but only lived with one.* She testified she heard voices that told her to hurt people. Her husband testified the claimant could not be left alone for eight hours.

(Admin. Tr. 25).

The ALJ relied heavily on Plaintiff's statements to support his evaluation of

the paragraph B criteria at step three. In doing so, the ALJ explained:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.03, 12.04, 12.06, and 12.15. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.
>
> In understanding, remembering, or applying information, the claimant has a *moderate limitation*. The claimant reported she could follow written instructions very rarely and spoken instructions depending on the day. However, she appropriately filled out the Function Report. The claimant testified she lived with her husband and their two pets, however, her husband did all of the household chores. During the claimant's psychological consultative examination, she had impaired attention, concentration, and memory skill. Yet, her treatment records revealed intact attention span and concentration. She had intact memory. *Further, the claimant reported she could perform personal care and attend church*. The undersigned finds the claimant has moderate limitation in understanding, remembering, or applying information.
>
> In interacting with others, the claimant has a *moderate limitation*. The claimant testified she did not like to go out in public and *had one child she lived with*. However, she also reported she enjoyed *going to church*. The claimant was repeatedly described as having an anxious affect, but had good eye contact and intact speech. Within her treatment notes, she reported anxiety, but she had no delusions. She had intact language

processing. The undersigned finds the claimant has moderate limitation in interacting with others.

With regard to concentrating, persisting, or maintaining pace, the claimant has a *moderate* limitation. The claimant reported difficulty paying attention and with following instructions. She reported anxiety and panic attacks. However, the claimant's treatment notes revealed intact attention span and concentration. She had a cooperative attitude with clear speech and logical thought processes. Nonetheless, the claimant's anxiety caused her fatigue and difficulty focusing. During the psychological consultative examination, the claimant had reduced cognitive functioning and concentration. The undersigned finds the claimant has moderate limitation in concentrating, persisting, or maintaining pace.

As for adapting or managing oneself, the claimant has experienced a *moderate limitation*. The claimant reported she could not drive and could barely ride in the car due to panic attacks. She inconsistently reported whether she could shop in stores. The claimant testified her husband performed most of the household tasks, but he also had two jobs. The undersigned notes the *claimant and her husband had a pet and child living with them*. The claimant's psychological consultative examination revealed she could *perform personal care*, but not housework. However, in the treatment records, the claimant reported she *attended church* and could perform some household tasks. She had intact attention span and concentration. The undersigned finds the claimant has moderate limitation in adapting or managing oneself.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(Admin. Tr. 23-24) (emphasis added).

Plaintiff argues that the ALJ mischaracterized her statements and then relied on those mischaracterizations throughout his decision. (Doc. 26, p. 10). She alleges

that she does not live with any of her children, and that she never testified that she could do laundry or personal care tasks. *Id.* Plaintiff also argues that the ALJ placed undue emphasis on the fact that she attends church without developing what functional skills that required. *Id.*

The Commissioner does not address this argument in her brief.

Plaintiff correctly notes that some of her testimony was mischaracterized. Some, however, was not. Although Plaintiff did not testify about doing laundry or personal care tasks during her administrative hearing, the ALJ says Plaintiff *reported* an ability to do those tasks, and cited to a function report form. On that form, in the area of "personal care" Plaintiff reported that she does not like to get dressed or shower, and needs to be reminded to eat. (Admin. Tr. 170). During her administrative hearing, Plaintiff testified that she could not brush her own hair. (Admin. Tr. 55). The statement about the laundry was accurately characterized, but the ALJ's characterization of Plaintiff's statements about her ability to engage in personal care tasks was not.

During her administrative hearing, Plaintiff testified that she lives with her husband and two pets. (Admin. Tr. 55). Plaintiff has three children, but each child lives full time with their other parent. (Admin. Tr. 57). Full custody of one of the children was awarded to the father after a legal battle where Plaintiff's mental health

was a factor in the decision. (Admin. Tr. 56). Plaintiff's testimony about the composition of her household, and the custody status of her children was clearly mischaracterized.

In his decision, the ALJ cited Plaintiff's ability to attend church as evidence that Plaintiff had: moderate difficulty understanding, remembering and applying information; moderate difficulty interacting with others; and a moderate limitation adapting and managing herself. (Admin. Tr. 23). Plaintiff correctly points out that, without some development, Plaintiff's ability to attend church is not relevant to any of the paragraph B criteria. It is not clear how much of the services Plaintiff understands or remembers, it is not clear how large the congregation is or how crowded the services are, and it is not clear whether Plaintiff is able to schedule and transport herself or whether it is arranged by someone else.

To support his findings as to several of the criteria, the ALJ relied on statements that were not accurate or not relevant. (Admin. Tr. 23). Therefore, substantial evidence does not support his conclusions. Further, the ALJ assessed a "moderate" limitation in each of the four paragraph B criteria. This is one level below marked. 20 C.F.R. § 416.920a(c)(4). If properly evaluated, there is at least a possibility that one or more "marked" limitations could be identified. Accordingly, the court is compelled to remand this matter for a new administrative hearing.

To the extent any further error exists, these errors can be addressed on remand.

V.      CONCLUSION

Accordingly, I find that Plaintiff's request for relief will be GRANTED as follows:

(1)   The final decision of the Commissioner will be VACATED.

(2)   This case will be REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3)   Final judgment will be issued in favor of Heather Ann Smales.

(4)   An appropriate Order will be issued.

Date: September 27, 2022                    BY THE COURT

                                            *s/William I. Arbuckle*
                                            William I. Arbuckle
                                            U.S. Magistrate Judge